IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HEALTHIER CHOICES
MANAGEMENT CORP.,

     Plaintiff,

v.

PHILIP MORRIS USA, INC. and
PHILIP MORRIS PRODUCTS
S.A.,

     Defendants.

CIVIL ACTION FILE

NO. 1:20-cv-4816-TCB

# **O R D E R**

This case comes before the Court on the motion [31] to dismiss

filed by Defendants Philip Morris USA, Inc. and Philip Morris Products

S.A.

## I.   **Background**

This is a patent infringement case about electronic cigarettes and

the way they deliver nicotine.

Traditional cigarettes deliver nicotine by burning. But with an eye

toward protecting the public—and particularly young people—from

tobacco-related diseases and death, the U.S. Food and Drug Administration ("FDA") in 2019 authorized for sale certain electronic cigarettes that do not require burning nicotine. One goal of the FDA's authorization of these heat-not-burn devices was to "completely move adult smokers away from use of combustible cigarettes." [1-2] at 2–3.

One such product authorized for sale was a device manufactured by Defendants known as the IQOS Tobacco Heating System. The IQOS device—which Defendants call a "Tobacco Stick"—"heats tobacco-filled sticks wrapped in paper to generate a nicotine-containing aerosol." *Id.* at 2. It does not burn tobacco. *See* [1] ¶ 26 (alleging that the IQOS device is a "'heat-not-burn' tobacco system").

Plaintiff Healthier Choices Management Corp. ("HCM") also manufactures an electronic nicotine-delivery device, called an "electronic pipe." HCM owns U.S. Patent No. 10,561,170, or "the '170 patent," which sets out specifications for an electronic pipe with a

battery, heating wire, and combustible material. The '170 patent delivers nicotine by initiating a combustion reaction.[1]

HCM contends that Defendants are infringing its '170 patent through the manufacture and sale of their IQOS device. It argues that even though tobacco may not burn in the IQOS device, some combustion occurs, and the device meets the remaining limitations for the '170 patent.

On February 25, 2021, Defendants moved to dismiss HCM's complaint. They argue that HCM's allegations of infringement are due to be dismissed because an exhibit that HCM attaches to its pleading conclusively demonstrates that combustion cannot occur within the IQOS device.

So, this case boils down to one question: whether HCM has adequately alleged that Defendants' electronic cigarette requires combustion. If HCM has plausibly alleged that some—even partial—

_____

[1] Claim 1, the first of two independent claims for HCM's patent, recites several limitations, including that the electronic pipe "transmit[s] an electric current from the battery to the heating element . . . initiating a combustion reaction." [1-1] at 11. Claim 5, the other independent claim, recites a method for igniting the pipe that includes "initiating, by way of the heating element, a combustion reaction." *Id.*

combustion is required, then the Court will deny the motion to dismiss. If, on the other hand, HCM's averments that the IQOS device requires a combustion reaction are implausible, then Defendants' motion to dismiss will be granted.

## II.   Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

4

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III.  Discussion

HCM contends that Defendants should be held liable for both direct and indirect infringement of the '170 patent.

5

## A.     Direct Infringement

Liability for direct infringement arises when a person "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). Proof of infringement requires the patentee to show "that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013) (citations omitted).

### 1.     Literal Infringement

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990)).

### a. Does HCM Plausibly Allege that the IQOS Device Meets the Combustion Reaction Limitation?

The short answer? No. But before wading into the fray with respect to HCM's pleading, a few words about the applicable pleading standard in patent infringement cases.

Plaintiffs have traditionally needed to satisfy only the following elements when pleading patent infringement:

> 1) an allegation of jurisdiction; 2) a statement that the plaintiff owns the patent; 3) a statement that the defendant has been infringing the patent by making, selling, and using [the device] embodying the patent; 4) a statement that the plaintiff has given the defendant notice of its infringement; and 5) a demand for an injunction and damages.

*Auburn Univ. v. Int'l Bus. Machs., Corp.*, 864 F. Supp. 2d 1222, 1225 (M.D. Ala. 2012) (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)).

This so-called "form complaint" traditionally need not satisfy the heightened pleading standards set forth in *Twombly*, 550 U.S. at 556, and *Iqbal*, 556 U.S. at 678. *Peralta v. Ca. Franchise Tax Bd.*, 673 F. App'x 975, 980 (Fed. Cir. 2016) (internal citation omitted); *see also K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283

(Fed. Cir. 2013) (concluding that "to the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleading requirements, the Forms control" (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012))).

However, a few years ago the Supreme Court abrogated Form 18. *See* Supreme Court of the United States, Order regarding amendments to the Federal Rules of Civil Procedure (Apr. 29, 2015); *see also Hi-Tech Pharms., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1335 (N.D. Ga. 2016) ("Rule 84 and its forms, including Form 18, were abrogated in December 2015." (citing *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005 (D.N.J. 2016))).

Since then, nearly all courts have found that the *Twombly*/*Iqbal* pleading standard applies to direct patent infringement claims. *See WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, No. 2:18-cv-529-FtM-99CM, 2019 WL 718576, at *2 (M.D. Fla. Feb. 20, 2019) ("To start, the Court notes that the Federal Circuit has held that [the] *Twombly*/*Iqbal* standard is the correct pleading standard to apply in

direct patent infringement cases." (internal citations omitted)); *Atlas IP, LLC v. S. Co.*, No. 17-20273-civ-Altonaga/Goodman, 2017 WL 4993378, at *3 (S.D. Fla. June 28, 2017) (concluding that "claims for direct infringement are subject to the *Iqbal/Twombly* standard applied to most other civil pleadings." (citing *Thermolife, Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *2 (S.D. Fla. June 8, 2016))); *Hi-Tech Pharm.*, 230 F. Supp. 3d at 1335–36 ("[A]fter the forms were abrogated, courts have almost unanimously held that all patent claims . . . are subject to the pleading requirements of *Iqbal* and *Twombly*." (internal citations omitted)); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-5790-JST, 2016 WL 4427209, at *2 (N.D. Cal. Aug. 22, 2016) (concluding that "[t]he majority of courts have found that the *Twombly* pleading standard now applies"); *Robern*, 206 F. Supp. 3d at 1010 (holding that the *Iqbal/Twombly* standard applies to patent infringement complaints after 2015).

These courts generally required plaintiffs to "plead that every limitation . . . in the representative claim can plausibly be found in an accused product." *Atlas IP, LLC v. City of Naperville*, No. 15 C 10744,

2016 WL 3907029, at *3 (N.D. Ill. July 19, 2016); *see also CAP-XX, Ltd.*
*v. Maxwell Techs., Inc.* No. 19-cv-1733-CFC, 2020 WL 2914497, at *2 (D.
Del. June 3, 2020) (requiring that a plaintiff allege facts that "plausibly
indicate that the accused products contain each of the limitations found
in the claim[s]" (quoting *TMI Sols. LLC v. Bath & Body Works Direct,*
*Inc.*, No. 17-965-LPS-CJB, 2018 WL 4660370, at *6 (D. Del. Sept. 28,
2018))); *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-5469-EDL, 2016
WL 1719545, at *2 (N.D. Cal. Mar. 9, 2016) (finding that "simply
reciting some of the elements of a representative claim and then
describing generally how an accused product operates, without . . .
addressing all of the claim requirements, is insufficient").

However, the Federal Circuit opined in 2018 that while *Twombly*
and *Iqbal* apply in the patent infringement context, a plaintiff need not
plead facts showing that every element of a claim is met. *See Nalco Co.*
*v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (reaffirming
that "the Federal Rules of Civil Procedure do not require a plaintiff to
plead facts establishing that each element of an asserted claim is met"
(quoting *In re Bill of Lading*, 681 F.3d at 1335)).

Since *Nalco*, most courts have required only that plaintiffs put the defendant "on notice of what activity . . . is being accused of infringement" to survive dismissal. *Bos. Fog, LLC v. Ryobi Techs., Inc.*, No. 19-cv-2310-LPS-JLH, 2020 WL 1532372, at *2 (D. Del. Mar. 31, 2020), *report & recommendation adopted*, 2020 WL 8079820 (D. Del. June 12, 2020) (quoting *Nalco*, 883 F.3d at 1350). In other words, they do not have to plead facts showing that every claim limitation is met.

But to ensure that the pleading nevertheless meets the *Twombly*/*Iqbal* plausibility standard, these courts have required a plaintiff to "do more than assert that the product infringes the claim; it must show *how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019) (citing *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017)); *see also Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, No. 19-1334-RGA-CJB, 2021 WL 2036671, at *17 n.24 (D. Del. May 20, 2021) (explaining that the court must be able to "understand from a patentee's allegations why the defendant's acts satisfy a limitation in

the asserted patent claim"). In other words, some factual support is required to render a patent infringement claim plausible.

With that framework in mind, the Court considers whether HCM has pled sufficient factual support to render its infringement claim plausible.

Defendants argue that HCM has not plausibly alleged that the IQOS device practices the combustion reaction limitation. In fact, they contend that HCM does the opposite by attaching to its pleading Defendants' Modified Risk Tobacco Product Application ("MRTPA"), which Defendants contend unequivocally states that combustion does not occur in the IQOS device.

The MRTPA was drafted by Defendants and submitted to the FDA to facilitate pre-market approval of the IQOS device. HCM attaches the document to its complaint as Exhibit J.

As a preliminary matter, this case involves an unusual procedural posture. Because HCM attached the exhibit to its pleading, it is properly before this Court when considering Defendants' motion, even though the Court indubitably could not have considered it had

*Defendants* attached it to their motion to dismiss. *See Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008) (noting that when considering a motion to dismiss, documents attached as exhibits to the complaint are "properly considered as part of the complaint" (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000))).[2]

HCM's decision to attach Exhibit J to its pleading has an important legal consequence. To the extent any facts in the exhibit conflict with HCM's more general allegations, the exhibit controls. *See FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (instructing

---

[2] HCM also argues that the Court may not consider the substance of a scientific review conducted by the FDA that *Defendants* attach to their motion as confirmation that combustion does not occur.

On this point HCM is correct. While "a district court may take judicial notice of matters of public record" when ruling on a Rule 12(b)(6) motion, *Serpentfoot v. Rome City Comm'n*, 322 F. App'x 801, 807 (11th Cir. 2009) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (taking judicial notice of filings with the Securities and Exchange Commission)), it may not take judicial notice of the contents of disputed facts within that document. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (opining that on a motion to dismiss, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein"); *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1374 n.4 (N.D. Ga. 2011) (holding that when ruling on a motion to dismiss, the court could not consider a promissory note and assignment of a security deed that "Defendants [we]re attempting to use . . . to dispute a central factual allegation of Plaintiff's complaint").

courts to "treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint itself").

This does not mean that the Court weighs the evidence of combustion and makes a factual determination as to whether combustion occurs. To do so would be to convert Defendants' motion into one for summary judgment. However, HCM has pled its case in a manner such that, while the Court will accept its allegations as true and draw all reasonable inferences in its favor, it may do so only to the extent that Exhibit J does not contradict its pleading. In other words, the question before the Court is:

> has [HCM] stated a claim for which relief could be granted, accepting the well-pleaded facts as true to the extent they do not conflict with the attachments, and making all reasonable inferences in Plaintiff's favor to the extent they are not foreclosed by the attachments?

*Israel v. Desantis*, No. 4:19cv576-MW/MAF, 2020 WL 2129450, at *3 (N.D. Fla. May 5, 2020).

Now to consider HCM's allegations. It avers that "[o]n information and belief, at least transmitting an electrical current from the battery to the heating blade in the Accused Infringing Product results in

14

combustion of at least a portion of the IQOS® Tobacco Stick." [1] ¶ 46. It

also alleges

> on information and belief, [that] while Defendants assert
> that the [IQOS device] does not cause combustion . . .
> Defendants' own testing concludes that 97%, not 100%, of
> the harmful chemicals associated with combustion are
> eliminated by the [IQOS device], and the presence of 3% of
> the two important combustion markers nitrogen oxides and
> carbon monoxide indicates that at least some combustion
> occurs.

*Id.* And later, "[o]n information and belief . . . activating the heating

element of the [IQOS device] . . . generates a combustion reaction." *Id.*

¶ 52 (citing the 97% reduction of combustion markers).

However, Exhibit J directly refutes these allegations. It provides

that the IQOS device

> was designed to generate an aerosol that has substantially
> fewer toxicants than conventional/combustible cigarette
> smoke. The key to reduced toxicity is the reduced formation
> of [harmful and potentially harmful constituents
> ("HPHCs")], which are created primarily through combustion
> in cigarettes. Indeed, when tobacco in cigarettes is burned it
> generates smoke . . . . *No combustion takes place* in [the
> IQOS device] . . . which significantly reduces, or in many
> cases nearly eliminates, HPHCs typically associated with
> combustion.

[1-10] at 20 (emphasis added). The exhibit then points to "several lines of evidence demonstrating that there is no combustion" in the IQOS device:

    (1)    "[t]he highest observed temperature of the tobacco in [the IQOS device] is approximately 300ºC . . . well below the temperature required for tobacco combustion";

    (2)    "there is significant drop in the temperature of the tobacco in [the IQOS device] when a puff is taken" and "[b]ecause combustion is a self-sustaining process, the decrease in temperature indicates an absence of combustion";

    (3)    "[t]he tobacco [in the IQOS device] is not consumed, as it is in a cigarette, and no ash is formed";

    (4)    the aerosol-driven device functioned even in a chamber "where one of the essential elements of combustion (oxygen) was absent";

    (5)    unlike combustion of tobacco in cigarettes, which generates solid ultra-fine particles, the IQOS device "does not contain solid particles"; and

    (6)    the IQOS device "contains substantially lower levels of HPHCs compared to cigarette smoke. Importantly, nitrogen oxides ($NO_x$) and carbon monoxide (CO), two important combustion markers, were reduced by over 97%."

*Id.* at 41–42. Elsewhere in the exhibit, it is repeated that "[n]o combustion takes place in [the IQOS device]" and that the IQOS device

"generates a nicotine-containing aerosol by heating the tobacco in a manner that avoids combustion." *Id.* at 20, 21.

Exhibit J also describes testing showing that the trace amounts of carbon monoxide and nitrogen oxides can be attributed to "background concentrations" in "simulated environmental conditions." *Id.* at 45. In other words, combustion is not the only possible explanation for the presence of trace amounts of these two so-called combustion markers.

Ultimately, the problem with HCM's argument is this: it seizes upon only a narrow sliver of Exhibit J. It cherry-picks from the exhibit without fairly reading the clear thrust of the document regarding combustion—i.e., that no combustion is involved. And because the procedural posture of HCM's pleading is such that the Court must accept as true only those well-pled facts that do not conflict with Exhibit J, it has not plausibly alleged that the IQOS device practices a combustion reaction.

### b.   Is This Impermissible Claim Construction?

Again, the short answer is no.

17

HCM contends that there is a genuine dispute as to the construction of the term "combustion," the resolution of which is inappropriate at the motion-to-dismiss stage. It is correct that district courts have generally been "cautioned against resolving claim construction disputes" at the motion to dismiss stage. *Bos. Fog*, 2020 WL 1532372, at *2 (citing *Nalco*, 883 F.3d at 1349).

However, HCM offers no alternative definition of combustion to show that there is a dispute as to the construction of that term. Therefore, the Court is not engaging in premature claim construction. *See TAGI Ventures, LLC v. Turner Sports Interactive, Inc.*, No. 1:16-cv-3412-MHC, 2017 WL 3469528, at *10 (N.D. Ga. Feb. 17, 2017) (explaining that no claim construction was necessary where the plaintiff "fail[ed] to explain why (or how) the identified terms are ambiguous"); *Cumberland Pharms. Inc. v. Sagent Agila LLC*, No. 12-825-LPS, 2013 WL 5913742, at *2 (D. Del. Nov. 1, 2013); *see also Valentine Comm'cns, LLC v. Six Continents Hotels, Inc.*, 389 F. Supp. 3d 1223, 1233 (N.D. Ga. 2019) (concluding that there was "no reasonable construction of the claims that would bring them within patentable subject matter"

18

(quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014))).

Moreover, no claim construction is necessary to determine that a claim limitation requiring a "combustion reaction" means that some sort of combustion must occur. *See Cumberland*, 2013 WL 5913742, at *2 ("No claim construction is necessary in order to determine that 'free from a chelating agent' means that a claimed composition may not include a chelating agent."). Accordingly, HCM's contention that the Court must impermissibly engage in claim construction to resolve Defendants' motion to dismiss is meritless.

### 2. Doctrine of Equivalents

Even if Defendants cannot be held liable for literal infringement, HCM briefly argues that they are subject to liability pursuant to the doctrine of equivalents. Under that doctrine, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem.*

*Co.,* 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).

However, "[p]rosecution history estoppel may bar a plaintiff from arguing infringement [pursuant to the doctrine of equivalents] in cases . . . [where] the applicant 'narrows a claim to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable.'" *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, Nos. 16-cv-2205 (VSB), 16-cv-2647 (VSB), 16-cv-3640 (VSB), 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) (quoting *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014)) (some alterations in original). Whether prosecution history estoppel applies is appropriately considered at the motion-to-dismiss stage. *See id.* (citing *Anchor Sales & Mktg., Inc. v. Richloom Fabrics Grp., Inc.*, No. 15-cv-4442 (RA), 2016 WL 4224069, at *4 (S.D.N.Y. Aug. 9, 2016)).

Here, Defendants argue that prosecution history estoppel bars HCM's infringement claim because, in an amendment to its patent application before the U.S. Patent and Trademark Office ("USPTO"), it

20

expressly distinguished combustion from vaporization to avoid prior art.

In other words, HCM narrowed its patent application to make clear that

the initiation of a combustion reaction distinguished its technology from

other patents. *See* [31-4] at 11.[3] Therefore, Defendants contend, HCM

cannot now expand that definition to encompass a device—the IQOS—

that does not require combustion.

HCM does not respond to Defendants' argument that prosecution

history estoppel bars its claim. Not only is the failure to respond

grounds for dismissal, *see Magluta v. Samples*, 162 F.3d 662, 664–65

(11th Cir. 1998), but HCM also "bears the burden of rebutting an

application of prosecution history estoppel" where, as here, a patentee

"has filed an amendment seeking to narrow the scope of a claim, and

'the reason for that amendment was a substantial one relating to

patentability.'" *EMD Millipore*, 768 F.3d at 1203 (quoting *Festo Corp. v.

Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366 (Fed. Cir.

2003) (en banc)). Because it fails to meet that burden, prosecution

---

[3] Filings before the USPTO are properly considered on a motion to dismiss as a matter of public record. *See Kimberly-Clark Corp. v. Extrusion Grp., LLC*, No. 1:18-cv-4754-SDG, 2020 WL 4001129, at *4 n.29 (N.D. Ga. July 15, 2020).

history estoppel bars its direct infringement claim pursuant to the doctrine of equivalents.

## B.   Indirect Infringement

As a final matter, "[i]t is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco*, 883 F.3d at 1355 (quoting *In re Bill of Lading*, 681 F.3d at 1333). Because HCM has failed to allege that an underlying act of direct infringement occurred, its claim of indirect infringement necessarily fails.

## C.   Amendment

The Court is mindful that leave to amend should be given freely "when justice so requires[.]" FED. R. CIV. P. 15(a)(2). That said, the Court surmises based on the clear and unambiguous language of HCM's exhibits that any attempt to overcome any pleading deficiencies would be futile. Therefore, the Court finds it inappropriate to permit HCM to file an amended complaint as of right. Instead, it will first be required to file a motion for leave to file a further amended complaint, and the motion must attach the proposed amended pleading.

## IV.   Conclusion

For the foregoing reasons, Defendants' motion [31] to dismiss is granted. HCM will have fourteen days in which to file a motion for leave to file a further amended complaint.

IT IS SO ORDERED this 23rd day of July, 2021.

Timothy C. Batten, Sr.
Chief United States District Judge